IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 3:07-773-JFA |
| v. | **MEMORANDUM OPINION, AND ORDER** |
| TRAYONE M. BURTON. | |

This matter is before the court upon the defendant's *pro se* motion (ECF No. 441)[1] for a reduction of his sentence pursuant to § 401 of the First Step Act of 2018[2] or alternatively for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) (ECF No. 453). Specifically, the defendant argues that his statutory range was enhanced under 21 U.S.C. § 851 due to a prior state drug offense which, under the First Step Act (FSA), no longer qualifies as an enhancing prior conviction. He contends that this change in intervening law, along with a disparity in his sentence, provides an extraordinary and compelling reason for this court to consider his release.  In his reply (ECF No. 453) to the government's first response in opposition (ECF No. 448), the defendant cites to *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020) to suggest that the court can apply retroactive relief for extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(B).

---

[1] The defendant filed a supplement to his motion (ECF No. 470) on September 13, 2022. He states that this supplement differs from his initial motion because the first motion sought this court's clarification of the applicable statutory provisions of retroactivity, whereas the supplement seeks a review of his prior conviction's qualification under the FSA's new matrix.

[2] Pub. L. 115-015 (S. 756), 132 Stat. 015 (enacted Dec. 21, 2018).

1

Earlier in this litigation, upon motion of the government, this court stayed a ruling on the defendant's motion pending a decision by the Fourth Circuit Court of Appeals in the case of *United States v. Goodwin*, 37 F.4th 948 (4th Cir. 2022).[3] The court then asked the government to file a supplemental brief in light of the *Goodwin* decision and any other intervening factors in sentencing law. The government responded in opposition and the defendant replied thereto. For the reasons which follow, the defendant's motion is denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the

---

[3] In *Goodwin*, the defendant was indicted for possession with intent to distribute cocaine and crack cocaine prior to the passage of the Fair Sentencing Act, but he was sentenced *after* its passage. The Court held because it was clear he was sentenced in accordance with the Fair Sentencing Act, he could not seek relief under § 404 of the First Step Act.

federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," 981 F.3d 271 (4th Cir. 2020).

3

As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

4

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

In this situation, the court will decline to require exhaustion on the intervening changes in the law issue raised by the defendant.[4] This is because the Warden is bound by U.S. Sentencing Guideline (U.S.S.G.) § 1B1.13 which limits the authority of the Warden to grant compassionate release requests to certain specified categories. A change in sentencing law is not within the jurisdiction of the Warden. Therefore, to require the defendant to return to the Warden to request relief that is not within the Warden's power to give would be to require a futile act. Exhaustion requirements are not jurisdictional and may be excused on grounds of futility. Accordingly, the court will proceed to review the defendant's motion on its merits.

---

[4] Attached to his supplemental motion for compassionate release (ECF No. 470), the defendant provides a copy his July 21, 2022 request to staff asking the BOP to recommend him for compassionate release under § 3582. Also attached is a copy of the Warden's response denying the defendant's request.

PROCEDURAL HISTORY

The defendant was one of two individuals named in a 5-Count Superseding Indictment filed in the District of South Carolina on August 22, 2007. The defendant was named in the following Counts:

Count 1:     Conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of powder cocaine and 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851;

Count 2:     Aiding and abetting in the possession with intent to distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 851 and 18 U.S.C. § 2;

Count 3:     Knowingly use and carry a firearm during an in relation to, and did possess a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and

Count 4:     Felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

The government filed an Information (ECF No. 15) advising the defendant that he was subject to increased penalties pursuant to 21 U.S.C. § 851 based upon a December 1993 conviction for possession with intent to distribute crack cocaine, and possession with intent to distribute crack cocaine within one half mile of a school. Because of this § 851 enhancement the defendant faced a mandatory minimum sentence of 20 years on Count 1.

On March 31, 2008, the defendant proceeded to trial and the jury ultimately convicted him on Counts 1, 2, and 4 of the Superseding Indictment. The jury found the defendant not guilty as to Count 3.

The defendant's total number of criminal history points was 6, which placed him in a category III criminal history. The defendant's prior convictions[5] include a 1991 (age 17) conviction for possession of a pistol by a person under 21 years of age for which he received a sentence under the Youthful Offender Act not to exceed 2 years confinement. This conviction generated 3 criminal history points. The § 851 enhancement relating to his 1993 (age 19) conviction for possession with intent to distribute crack cocaine generated an additional 3 criminal history points.

The defendant's sentencing was held on February 2, 2009. This court adopted the guideline sentencing provisions set forth in the Presentence Report ("PSR") after overruling various objections filed by the defendant regarding drug amounts and loss of acceptance of responsibility. As outlined in the PSR, the defendant was responsible for a total 87,136 kilograms of converted marijuana weight which put his base level offense at 38. He received a 2 point enhancement for possession of a dangerous weapon and a 4 point enhancement for his role as an organizer in the criminal activity.[6] The court subsequently granted a defense motion for a variance[7] pursuant to 18 U.S.C. § 3553(a) and reduced the

---

[5] The defendant's other adult convictions which were not assigned points include disorderly conduct, pedestrian prohibited on a central highway, and failure to stop on police command. At the time of the indictment, the defendant had pending charges for peeping Tom, voyeurism, or aggravated voyeurism. He also had pending state charges in 2006 for trafficking marijuana, unlawful carrying of a weapon, and possession of a stolen pistol, which were related to the instant federal offense.

[6] Although this resulted in a total offense level of 44, the guidelines require any level above the maximum level of 43 to be reduced to 43.

[7] The defendant moved for a variance at sentencing asking the court to grant a 2-level reduction for acceptance of responsibility based upon his pretrial cooperation with federal authorities and assistance with the apprehension of a federal fugitive who was indicted in North Carolina federal

defendant's total offense level by 2 levels from 43 to 41 to produce a sentencing range of 360 months to Life imprisonment.

The defendant was sentenced to a term of custody of 360 months, consisting of 360 months on Count 1; 120 months on Count 2; and 120 months on Count 4, to run concurrently and to be followed by 10 years of supervised release. [8]

The defendant filed an appeal of his judgment and conviction which the Fourth Circuit Court of Appeals affirmed in its mandate of August 2, 2010 (ECF No. 305). The defendant subsequently filed a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. That motion was denied by this court on June 12, 2012 (ECF No. 354).

On April 25, 2017, this court entered an order (ECF No. 405) granting the defendant's motion to reduce his sentence pursuant to Amendment 782 of the U.S. Sentencing Guidelines ("USSG"). In that order, the court noted it further reduced the defendant's criminal offense level by 2 levels resulting in an offense level of 39. When

---

court and was the defendant's major drug supplier. The defendant also contended that his determination to proceed to trial was the product of indirect threats and fear from NC fugitive Dennis Wilkinson (the supplier that the defendant assisted the government in apprehending). According to the defendant, he believed that if he went to trial, his action would offer Wilkerson an opportunity to testify in his trial, and thus gain a sentence reduction, which would ultimately abate threats to the defendant and his family. Wilkerson testified at Burton's trial. The variance motion suggested that "merely by coincidence of jurisdiction," defendant Wilkerson was offered a plea to a level 36 without cooperation by the NC federal authorities. The defendant claims that even after extensive cooperation, he was only offered a plea to a level 38 which created a disparity. The defendant argued that such disparity occurred only because of sentencing negotiation discretion accorded to U.S. Attorneys nationwide which leads to a subversion of sentencing uniformity, the intended goal of the Advisory Sentencing Guidelines, and which needed addressing by the court at sentencing, citing *United States v. Presley*, 547 F.3d 625 (4th Cir. 2008) (*See* Motion for Variance, ECF No. 236).

[8] This court entered an Order and Preliminary Order of Forfeiture (ECF No. 241) as to the defendant in the amount of $4,000,000 in United States currency, along with other real property.

combined with a criminal history category of III, this produced a guidelines range of 324 to 405 months. An amended judgment was entered reducing the defendant's sentence from 360 to 348 months on Count 1; with the 120-month sentences each on Counts 2 and 4 to remain, all to run concurrently.

The defendant was approximately 33 years old at the time of his Indictment. The defendant has received credit for time served since April 6, 2006. He has served approximately 16 years of his 348 month (29 year) sentence. His projected release date from the BOP is January 2032 (just over 9 years from now) and he is presently housed at FCI Jesup in Georgia.

## DISCUSSION

### I.    *Relief under § 404 of the First Step Act*

The First Step Act was signed into law on December 21, 2018. One of the changes in the Act relates to the Fair Sentencing Act of 2010 which, among other things, reduced statutory penalties for cocaine base ("crack") offenses.[9] Specifically, § 404 of the First Step Act retroactively applies the reduced penalties under the Fair Sentencing Act to "covered offenses" committed *before* August 3, 2010. The Fair Sentencing Act of 2010 did not reduce the statutory penalties associated with convictions involving 5 or more kilograms of cocaine. Rather, it only reduced those convictions involving *crack* cocaine.

---

[9] Effective August 3, 2010, the Fair Sentencing Act reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (raising from 50 to 280 grams the amount of cocaine base needed to trigger statutory range of 10 years to life in prison); 21 U.S.C. § 841(b)(1)(B)(iii) (raising from 5 to 28 grams the amount of cocaine base needed to trigger statutory range of 5 to 40 years in prison).

As the government points out, the defendant was not convicted of a "covered offense." He was convicted for conspiracy to possess with intent to distribute more than 5 kilograms of powder cocaine and more than 1,000 kilograms of marijuana. The Fair Sentencing Act only changed the penalties related to cocaine base ("crack"). Accordingly, the defendant cannot avail himself of § 404 of the First Step Act.

## II.     *Compassionate Release*

Apart from his reliance on § 404, the defendant also asserts several "extraordinary and compelling" reasons in an attempt to avail himself of compassionate release under 18 U.S.C. § 3582(c)(1)(B). Defendant's various filings can be construed to assert three separate reasons he avers are extraordinary and compelling: (1) his sentence would be much different if issued anew under today's sentencing laws and guidelines; (2) his sentence is greater than that of similarly situated defendants; and (3) his exemplary record while incarcerated.

## III.     *Sentencing Amendments*

Defendant first argues that his sentence would be much different today given that the §851 enhancement used in his original sentencing is no longer valid. Section 401 of the First Step Act changed both the level of predicate felonies required for sentence enhancement under 21 U.S.C. § 841(b)(1)(A) and the penalties to which such predicates subject a defendant.[10]

---

[10] Prior to the First Step Act, a defendant faced an enhanced mandatory minimum sentence if he had a prior conviction for a "felony drug offense." A "felony drug offense" is defined as an offense that prohibits conduct related to illegal drugs and carries more than a one year sentence. However, after passage of the First Step Act, a defendant now faces an enhanced mandatory minimum if he

The government counters that § 401 was not made retroactive and only applies to cases where the offense was committed *prior to* enactment of the First Step Act. However, the government acknowledges that courts have applied the changes in the First Step Act retroactively pursuant to § 3582(c)(1)(A)(i). Citing *United States v. McCoy*, *supra*, the government notes the Fourth Circuit's holding that sentencing changes brought about by the First Step Act can, in certain situations, constitute "extraordinary and compelling reasons" to justify a sentence reduction pursuant to § 3582(c)(1)(A)(i).

Consequently, the government concedes that the defendant's prior conviction for possession with intent to distribute crack cocaine does not qualify as a newly defined "serious drug felony." Therefore, the defendant, if sentenced today, would no longer face an enhanced mandatory minimum of 20 years as to Count 1. However, as the government points out, removal of the § 851 enhancement would not alter the defendant's Guidelines range. In other words, the defendant's sentencing Guidelines range greatly exceeded 20 years and therefore the § 851 enhancement played no part in the determination of the defendant's ultimate sentence of 360 months, nor his reduced sentence of 348 months.

Additionally, the defendant argues that his offense level would be 39 and that his criminal history category would decrease from III to II, resulting in a new Guideline range of 292 to 365 months. Defendant offers no support for his contention that his criminal history category would decrease from III to II. The fact that a prior conviction no longer

---

has a prior conviction for a "serious drug felony." A "serious drug felony" is a more stringent standard and requires that the defendant have served more than 12 months incarceration for which his release of imprisonment was within 15 years of the commencement of the instant offense.

qualifies as an § 851 enhancement does not alter the criminal history points otherwise attributable to that prior conviction.

Because the defendant's now invalidated § 851 enhancement causes no alteration to defendant's sentencing Guidelines, his argument based upon changes in sentencing laws falls flat. Thus, the defendant's motion for compassionate release is denied to the extent it is based upon changes in sentencing laws because the changes the defendant points to have caused no disparity in the sentence the defendant received versus what he would receive today. Thus, the defendant has failed to state an extraordinary and compelling reason to warrant the relief sought.

However, even if this court were to accept the defendant's proposition that if sentenced today his offense level would be 39 and that his criminal history category would decrease from III to II, resulting in a new guideline range of 292 to 365 months, (ECF No. 470, p. 3) the court would still be constrained to deny the defendant's motion.

The initial factor noted in *McCoy* when considering compassionate release was the gross disparity between the sentence those defendants initially received compared to a sentence they would have received under amended sentencing provisions. Specifically, the Court noted disparities ranging from 200 months to 30 years. *United States v. McCoy*, 981 F.3d 271, 279 (4th Cir. 2020)("[T]he First Step Act's change to sentencing law under § 924(c) — which would have shortened each defendants' sentence by a full 30 years — could be considered under the 'extraordinary and compelling' standard."). Here, the defendant is currently sentenced to 348 months, which is within his alleged new Guidelines range. Thus, there is no disparity between his current sentence and a sentence within his

supposed new guidelines. Moreover, any disparity between his current sentence and a sentence at the low end of his proposed Guidelines would not be so great as to create an extraordinary and compelling reason.

Apart from sentencing disparities, the Fourth Circuit in *McCoy* went to great lengths to emphasize particular circumstances presented in that case and, on more than one occasion, noted that the sentence reductions approved in that case were the product of "individualized assessments" of each individual defendant's sentence. *Id*. at 286.[11]

The court thus turns to the specific facts in the defendant's case to provide the individualized assessment called for in *McCoy*. First, it cannot seriously be argued that the defendants in *McCoy* were similarly situated to the defendant here. McCoy was only 19 years old at the time of the commission of his crime and his only prior conviction was for reckless driving. In the three other cases, the defendants were between 22 and 24 years old at the time of their offenses. One of those defendants had no criminal history and another had one minor prior conviction for which he served no jail time.

Here, Burton was 33 years old at the time of the offenses and he had a significant criminal history consisting of several convictions related to possession of guns and drugs. The defendant's criminal history category was III.

The *McCoy* Court also emphasized the defendants' post-sentencing conduct and rehabilitation. Here, the defendant's disciplinary record contains a single infraction for

---

[11] Indeed, the Fourth Circuit stressed the need for "individualized assessment" of each sentence twelve times in the opinion. *McCoy* at 274, 275, 277, 278, 279, 280, 286 (twice), 287, and 288 (twice).

assault without serious injury, but is otherwise unblemished. The court would note that Burton has availed himself to numerous education and vocational courses while incarcerated including obtaining his GED. However, these similarities are not enough to warrant the type of compassionate release considered in *McCoy*.

Given all of the above, the court concludes that the defendant would not be entitled to compassionate release even if his proposed guidelines calculation was correct.

## IV.    *Claim of Sentencing Disparity*

The defendant argues that except for his § 851 enhancement (which he asserts, and the government concedes, is no longer applicable), he would have received a sentence consistent with those of his "codefendants." Although there was only one co-defendant in Burton's criminal case, the drug conspiracy involved in Burton's case was interrelated with two other drug conspiracy cases in this district assigned to this court. The defendant has carefully combed the record of the sentences handed out in those related cases and strongly asserts that he is entitled to some reduction to avoid unwarranted disparity with the sentences imposed in those related cases.

As an initial proposition, it should be noted that the Fourth Circuit Court of Appeals has observed "the kind of disparity with which 18 U.S.C. § 3553(a)(6) is concerned in an unjustified difference across judges (or districts) rather than among defendants in a single case." *United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007) (internal quotation marks omitted), vacated on other grounds, 552 U.S. 1089 (2008); *see also United States v. Ball*, No. 19-4851, 2022 WL 861823, at *2 (4th Cir. Mar. 23, 2022).

The defendant's case was related to other drug conspiracies in the cases of Tyrone Shelly and his sons, Ronchez and Ranchez (CR No. 3:06-1225-JFA) and Travis Pinkston, et al. (CR No. 07-155-JFA). Many of the defendants in those cases are not substantially similar to Burton. Tyrone Shelley received a substantial reduction in his sentence by virtue of a Rule 35 motion in reward for his substantial assistance. Ronchez Shelley also received a substantial reduction in his sentence, but once again, this was as a result of a Rule 35 motion for substantial assistance. Ranchez Shelley received a lesser reduction based on his substantial assistance.

Hassan Richardson's case was somewhat unusual because he pleaded guilty to Count 1 which contained references to threshold amounts of both powder cocaine and crack cocaine. At the Rule 11 colloquy proceeding, however, the court stressed that the threshold quantities necessary to trigger a certain sentence could be proved in the alternative. That is to say, either crack cocaine or powder cocaine would suffice.

At the Rule 11 colloquy, the court accepted Richardson's plea, the defendant agreed to plead guilty to Count 1, but the plea agreement did not specify which prong of § 841(b)(1)(a) substances (cocaine or crack cocaine) the defendant was admitting to. Then when the court asked the government to summarize its case against the defendant, the FBI agent who gave testimony referred only to crack cocaine and not powder cocaine.

The PSR prepared in that case held Richardson responsible for 1.3 kilograms of crack cocaine and 125 grams of powder cocaine. The Fair Sentencing Act of 2010 removed the statutory mandatory minimum for his conviction with regard to the threshold quantity

of crack cocaine, but that did not affect sentences related to powder cocaine. Based on this anomaly, the court gave Richardson the benefit of the doubt and lowered his sentence.

It can thus readily be seen that most of these defendants in the related cases received sentence reductions for reasons that are unrelated to defendant Burton's case.

The defendant also cites this court's separate, but related criminal case involving Javis McKenzie. In an order entered on July 7, 2020 (CR No. 3:07-155-JFA, ECF No. 2217), this court granted Javis McKenzie's FSA § 404 motion and reduced his sentence from 480 months to 240 months. In doing so, the court noted that the defendant— although sentenced to a term of 480 months—was essentially serving a "life" sentence due to his advanced age at the time of sentencing. This court made reference to an observation by the Fourth Circuit Court of Appeals in *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019), that a defendant's good conduct in prison while serving a life sentence was a significant factor the court must address in considering a reduced sentence pursuant to USSG Amendment 782. McKenzie's post-sentencing adjustment in prison was exemplary. Moreover, McKenzie received a much longer sentence than most of the other defendants in his criminal case (CR No. 3:07-155-JFA). Based on these factors, the court imposed a reduction in McKenzie's sentence. Quite naturally, Burton relies heavily upon the rationale employed by this court in reducing McKenzie's sentence.

As the government points out in its brief, McKenzie was convicted of distributing crack cocaine, a covered offense entitling McKenzie to relief pursuant to § 404. As stated above, Burton was not convicted of a covered offense and therefore cannot avail himself to the relief afforded to McKenzie. Thus, Burton's attempt to analogize his current situation

to McKenzie is inappropriate given that Burton is requesting compassionate release — not relief under § 404.[12] McKenzie was sentenced to 40 years for his cocaine possession/distribution conviction, was one of 22 co-defendants, and was the only defendant serving that length of a sentence. Also, several of McKenzie's co-defendant's sentences were reduced for other reasons such a presidential commutation, cooperation under Rule 35, and provisions of the First Step Act or amendments to the sentencing Guidelines.

The defendant compares his case to McKenzie's in that they were both cocaine suppliers, including some of the same co-conspirators. He notes that both he and McKenzie went to trial rather than pleading guilty. And, that he and McKenzie were both sentenced by this court to a significantly long prison sentence.

Here, defendant Burton has only one co-defendant, Kenneth Maurice Davis (a distant cousin of Burton's). Davis pleaded guilty to Count 1 of the Superseding Indictment. His criminal history category was I (no criminal history points) and his total offense level was 37, which produced a sentencing range of 210 to 262 months imprisonment. At sentencing, this court granted the government's § 5K1.1 variance motion based upon substantial assistance and imposed a sentence of 97 months upon Davis.

At base, the defendant is correct that the term of incarceration he received varies greatly from numerous other defendants. However, those other terms of incarceration were based on wildly different factors, offenses, and post-sentencing reductions. Accordingly,

---

[12] It should be noted that this court denied a motion for compassionate release later asserted by McKenzie. (CR No. 3:07-155-JFA) (ECF No. 2310).

that other defendants may have received different sentences based on different factors does not equate to an extraordinary and compelling reason to justify relief.

## V. *Defendant's Post Sentencing Conduct*

The defendant's disciplinary history has been exemplary during his 16-year incarceration with the exception of a May 2019 charge (level 224)[13] for assault without serious injury. He has availed himself of at least 27 educational and vocational opportunities offered by the BOP. These included such useful courses as entrepreneurship, business ownership, personal finance, vocabulary and keyboarding.

The defendant contends that he has an impressive post-sentencing record that favors consideration of the § 3553 factors. He further asserts that he has a strong, extensive release plan with a broad network of family, friends, and community contacts to assist him upon his release.

The defendant avers that he has acquired minimum/out custody security and is presently housed at a Federal Prison Camp without a fence. He states that he has received his GED within 2 years of his imprisonment and has also obtained a degree in contract/construction management; he has amassed numerous institutional program certificates in several educational programs; and, he states that he has maintained steady employment history throughout his term of imprisonment, with excellent monthly work reports.

---

[13] Violations at the BOP are categorized as 100-level, 200-level, 300-level, or 400-level, with 100-level violations being the most serious and 400-level offenses being less serious offenses.

Despite the defendant's exemplary record, a defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Because the defendant's other grounds do not rise to the level of extraordinary and compelling, the defendant's disciplinary history cannot provide a stand-alone basis for relief. Thus, the defendant's motion for compassionate release on these grounds must likewise be denied.

*Factors under 18 U.S.C. § 3553(a)*

Even if the court were to conclude that the defendant has demonstrated an "extraordinary and compelling" reason for compassionate release, this court would nevertheless exercise its discretion not to disturb the defendant's sentence based upon a review of the 18 U.S.C. § 3553(a) factors. *United States v. High*, No. 20-7350, 2021 WL 1823289 (4th Cir. May 7, 2021)("In any event, if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must consider the § 3553(a) sentencing factors to the extent that they are applicable in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.")(cleaned up).

1. *Nature and Circumstances of the Offense*. The nature and circumstances of the defendant's offenses are discussed above.

2. *History and Characteristics of Defendant*. The defendant states that he is now 48 years old and has served more than 62 percent (16 years) of his 348-month sentence. He states that he was 33 when the instant offense began.

The PSR sets out in greater detail the defendant's characteristics, as well as his criminal history and convictions. The defendant has never married, but has three children. He was born and raised in South Carolina and has three sisters. The defendant completed the 10th grade of high school. Since 2007, he has prior work experience as a self-employed long distance truck driver.

The defendant's post-sentencing conduct is commendable and has been discussed earlier in this order. The defendant has availed himself of numerous educational and vocational opportunities offered by the BOP.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant convictions, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that the sentence previously imposed is adequate to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that the sentence previously imposed is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Sentencing Disparities*. This factor has been discussed above.

20

CONCLUSION

For all the foregoing reasons, the court concludes that the defendant has not demonstrated an extraordinary and compelling reason for relief under § 3582(c)(1)(A) or shown he is entitled to relief under § 404. Thus, his motion is denied.

Moreover, even if the court were to conclude that the defendant has demonstrated an extraordinary and compelling reason for release based upon his *McCoy*, this court would nevertheless decline to modify his sentence. The court reaches this conclusion after carefully considering the individualized circumstances of the case, as reflected in the § 3553(a) factors, and as supplemented by the defendant's record while incarcerated.

IT IS SO ORDERED.

November 17, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge